**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Norfolk Division

GREGORY OUTLAW, #24666-016,

        Petitioner,

v.                                                                                          ACTION NO.
                                                                                            2:04cv644

KATHRYN HAWK-SAWYER,

and

EDWARD REILLY,

        Respondents.


**UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This matter was initiated by petition for writ of habeas corpus under 28 U.S.C. §2241. The matter was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia.

**I. STATEMENT OF THE CASE**

**A. Background**

Petitioner Gregory Outlaw ("Outlaw") was convicted in the Superior Court for the District of Columbia of armed robbery, robbery, attempted unauthorized use of a vehicle, and distribution of cocaine. He was sentenced to a term of 24 years and 9 months imprisonment.

Outlaw was first paroled by the D.C. Board of Parole in 1992, and his parole was revoked

in 1995. He was reparoled on August 12, 1996, with a full term date of September 28, 2011. Jurisdiction over his parole was transferred to the U.S. Parole Commission on August 5, 2000.[1]

Outlaw was re-arrested on a criminal warrant on December 7, 2001, for an aggravated assault that occurred on June 11, 2001. Outlaw was accused of stabbing Mr. Alfred Chambers in the arm and chin. As a result of this arrest, the D.C. Court Services and Offender Supervision Agency sent a report of alleged violations and a warrant request to the Commission on December 12, 2001.

According to the D.C. police affidavit supporting the warrant request, D.C. Police Detective Thomas Webb interviewed Jane Chambers, the sister of the victim, on June 17, 2001, six days after the event. She stated she came upon the two men after her brother had been stabbed. She saw Outlaw holding her brother down with a knife to his throat, and saw that he was "bleeding profusely" from multiple lacerations. She stated she heard Outlaw say, "I should kill you," and she responded "the hell you ain't," and attempted to push Outlaw off her brother. Outlaw then "cut" her left arm, and "walked from off the lane and once he got across the street he ran."

The next day, on June 18, 2001, Detective Webb interviewed Alfred Chambers who stated he had known Outlaw for at least fifteen years. After being shown a photograph of Outlaw, Alfred Chambers stated, "yes, that is Greg Outlaw, the one that cut me." Jane Chambers also stated she had known Outlaw for over fifteen years, and when shown his photograph on June 19, 2001, remarked, "yeah, that's him, he still looks the same, Gregory Outlaw."

The Commission issued a warrant on January 8, 2002, charging Outlaw with aggravated

---

[1] The National Capital Revitalization and Self-Government Improvement Act of 1997 ("Act") abolished the D. C. Board and vested authority over parole decisions involving District of Columbia Code felony offenders in the U.S. Parole Commission. See National Capital Revitalization and Self-Government Improvement Act of 1997, Pub. L. No. 105-33, § 11231(a)(1), 111 Stat. 712, 745.

assault. Outlaw was arrested on January 16, 2002, and was given a probable cause hearing on January 25, 2002. Outlaw was represented by an Assistant Public Defender who proffered that the complainant, Alfred Chambers, admitted he had been drunk at the time of the incident, that he had initiated the fight with Outlaw, and that this was a "misunderstanding."

Outlaw requested a local revocation hearing. The Commission identified three adverse witnesses: Community Supervision Officer Sharon Sharpless, Alfred Chambers, and Detective Thomas Webb. Outlaw identified one additional adverse witness for the revocation hearing, Jane Chambers.

Prior to the scheduled hearing, the Commission was unable to locate Alfred Chambers, and concluded he "may be incarcerated." Subsequently, the Commission discovered Alfred Chambers was in jail in Maryland. Prosecutors told the Commission that Alfred Chambers had recanted his story and had become uncooperative. The Commission concluded that it was not required to obtain Alfred Chambers' presence at the hearing because, having recanted his accusations, he was no longer an adverse witness, i.e., a person upon whose testimony the Commission proposed to rely in making its revocation decision. The Commission would have to rely instead on the evidence given by Jane Chambers and Detective Webb.

Outlaw's revocation hearing was initially scheduled for February 20, 2002. However, it was necessary to continue the hearing to March 6, 2002, because Jane Chambers did not appear in response to the Commission's subpoena.

On February 19, 2002, an investigator with the Public Defender Service took Alfred Chambers' statement. Alfred Chambers stated that it had not been Outlaw who "cut" him, but had been another person named Gregory Lewis. He claimed Outlaw had helped him by pushing Gregory

Lewis away from him.

Jane Chambers and Detective Webb appeared at the March 6, 2002 revocation hearing. Outlaw was represented by an Assistant Public Defender. Outlaw denied the charge, challenged the credibility of Alfred and Jane Chambers, and could not explain why they would have filed the charges against him.

Jane Chambers testified that she had been intoxicated when the assault occurred, and she did not remember what she had told the police that night. She denied everything she told Detective Webb on June 17, 2002. She testified that she found Alfred Chambers lying on the floor by himself bleeding. She admitted she sustained a cut on the arm, but could not explain how that happened. She left the hearing room, escorted by Outlaw's parole officer Sharpless.

Sharpless came back to the hearing room and stated that Jane Chambers told Sharpless she was afraid to testify in front of Outlaw, and had additional testimony to give outside of his presence. The hearing officer excused Outlaw from the room and Jane Chambers came back in to testify. Jane Chambers then denied that she was afraid to testify in front of Outlaw, and stated she had nothing additional to add. She was excused from the hearing room until after Detective Webb testified, at which time she returned. Jane Chambers then explained to the hearing examiner that she had been informed by her niece that she would receive a "$1,000 pay off" for not testifying. When the examiner asked Jane Chambers exactly what it was that she was expected not to testify about, she responded that she did not know, but that she had not received any money.

Outlaw's attorney argued that from her observation of Jane Chambers at the revocation hearing, Ms. Chambers was clearly under the influence of something. The attorney asserted that Ms. Chambers' testimony was not credible, and that her statement to Detective Webb on June 17, 2001,

was also not credible for the same reason.

Detective Webb testified that both Alfred and Jane Chambers were visibly intoxicated on the night of June 11, 2001, when he observed their injuries. He testified Alfred Chambers received a 12 to 14 inch laceration to the arm which took over 100 sutures to close. Jane Chambers suffered a 4 to 6 inch laceration to her arm, but refused medical care. He testified he interviewed other intoxicated individuals who identified Greg Outlaw as the assailant, but was not able to locate them at a later date. He testified that when he interviewed Jane Chambers on June 17, 2001, and took her detailed account of the assault, she was not intoxicated, and she identified Outlaw from a photograph as the assailant. Detective Webb also recounted his unsuccessful effort to interview Jane Chambers' niece after an Assistant U.S. Attorney told him about a potential bribe offer.

The hearing examiner made a finding that the testimony of Jane Chambers during the revocation hearing was not credible, and noted that she appeared "nervous, frightened and intimidated by Mr. Outlaw's presence." The examiner concluded that the most credible and convincing explanation of the matter was that Jane Chambers had told the truth to Detective Webb on June 17, 2001. Based on the June 17, 2001 statement, the examiner found that Outlaw had assaulted Alfred Chambers, but that he had not intended to murder him. The examiner recommended that Outlaw's parole be revoked and that he be continued to the top of the Commission's reparole guidelines, because Outlaw "does have a history of convictions for crimes of violence and has committed a crime of violence involving bodily injury and a dangerous weapon while on parole supervision."

On March 19, 2002, the Commission issued a Notice of Action revoking Outlaw's parole, forfeiting his time on parole, and continuing him to a presumptive parole on December 1, 2006, after

60 months in prison. Outlaw moved the Commission to reopen his case, contending the Commission had not met the preponderance of the evidence standard, and that his accusers were "known substance abusers," and therefore, "not credible." The Commission rejected Outlaw's motion on the ground that the original statement of the witness did support revocation.

Outlaw, presently in the custody of the Bureau of Prisons in F.C.I. Petersburg, in Petersburg, Virginia, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 on January 3, 2002 in the U.S. District Court for the District of Columbia. Following the respondents' motion to transfer, the case was transferred to this court by order entered May 28, 2004. On January 3, 2005, respondents filed a Rule 5 answer.

## B. <u>Grounds Alleged</u>

Outlaw asserts that the following entitle him to relief under 28 U.S.C. § 2241:

> (a) he was denied due process during his revocation hearing due to the Commission's failure to have the victim of the alleged assault available for cross-examination; and,
>
> (b) the evidence presented at the revocation hearing did not provide a basis for the Commission's decision to revoke his parole.

## II. <u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

A parolee is entitled to the following due process protections during the revocation process:

> (a) written notice of the claimed violations of parole; (b) disclosure of the evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine witnesses (unless the hearing officer specifically finds good cause for not allowing the confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and

> (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

Morrisey v. Brewer, 408 U.S. 471, 489, 92 S. Ct. 2593, 33 L.Ed.2d 484 (1972). Outlaw argues he was denied due process when he was not given a chance to confront and cross-examine Alfred Chambers during his revocation hearing. The Supreme Court defined an adverse witness as a person "who has given adverse information on which parole revocation is to be based." Morrisey v. Brewer, 408 U.S. at 487.

Respondents assert Alfred Chambers was not an "adverse witness," because he had fully recanted his accusations against Outlaw prior to the revocation hearing, and the hearing examiner did not consider his earlier identification of Outlaw as his assailant. The hearing examiner did consider Alfred Chambers' statement given to an investigator for the D.C. Public Defender Service, that Gregory Lewis was the person who assaulted him, and that Outlaw was trying to help Chambers. This Court agrees that at the time of the revocation hearing, Alfred Chambers was not an adverse witness, and that if he were called upon to testify at Outlaw's revocation hearing, Alfred Chambers would most likely have testified in conformity with the statement given to the Public Defender Service investigator.

The Court further finds that even if Alfred Chambers was an adverse witness, the Commission had good cause for proceeding with the revocation hearing without him. Outlaw had fully recanted his accusations prior to the revocation hearing, and his statement recanting the accusations was presented during the hearing; he was incarcerated in Maryland at the time of the revocation hearing; and, both petitioner and the Commission's general counsel agree Alfred Chambers was a substance abuser with little credibility.

Lastly, petitioner argues that due to the fact that both Alfred Chambers and Jane Chambers recanted their earlier statements identifying petitioner as the person who assaulted them, there was no basis for the parole revocation. The merits of the Commission's decisions, including the revocation decision, are committed to its discretion. 18 U.S.C. §4218(d) (1976). As a result, the Commission's fact-finding decisions are effectively insulated from judicial review. See Garcia v. Neagle, 660 F.2d 983, 988 (4th Cir. 1981). The requirements of due process are satisfied as long as there is "some evidence" in the Commission's record to support the revocation decision. See Superintendent, Massachusetts Correctional Institution, Warpole v. Hill, 472 U.S. 445, 455-57, 105 S. Ct. 2768, 86 L.Ed.2d 356 (1985). This standard does not require an examination of the entire record, or a reweighing of the credibility of witnesses and other evidence. Id. Consequently, a revocation decision for a D.C. Code offender may be judicially overturned only if it is "either totally lacking in evidentiary support or so irrational as to be fundamentally unfair." See Duckett v. Quick, 282 F.3d 844, 847 (D.C. Cir.), cert. denied, 537 U.S. 863 (2002).

The Commission found by a preponderance of the evidence that Outlaw violated his parole. This finding, and the resulting decision to revoke parole, were not "totally lacking in evidentiary support," as they were based upon the statement of the victim's sister six days after the incident.

The Commission may revoke parole upon a charge initially made, but later recanted, so long as the Commission finds that the recantation is not credible. See Alston v. Gaines, 158 F. Supp.2d 76, 78-80 (D.D.C. 2001) (upholding revocation of parole based upon a charge of domestic assault despite the victim's retraction of her original complaint). In Stinchfield v. Menifee, 119 F. Supp.2d 381 (S.D.N.Y. 2000), it was held that the Commission did not deny due process when it rejected an assault victim's recantation as "not plausible," and relied upon "the initial statements to the arresting

officers . . ..” 119 F. Supp.2d at 385.  See also Moore v. Dubois, 848 F.2d 1115, 1119 (10th Cir. 1988), cert denied, 488 U.S. 1043 (1989) (“While it is true that Suzy Moore later retracted the allegations of force that she had made in her affidavit [accusing a parolee of rape], other evidence indicated that it was the affidavit, not the later testimony, that was true.”).

The hearing examiner relied upon Jane Chambers' original statement, which was given to Detective Webb on June 17, 2001.  Further, the hearing examiner had ample reason to disbelieve Jane Chamber's recantation during the revocation hearing.  Her own testimony at the hearing was that she may have been bribed not to testify.  Consequently, there was sufficient evidence in the record for the Commission's decision to revoke parole, and the Commission did not violate Outlaw's due process rights.

### III. RECOMMENDATION

For the foregoing reasons, the Court recommends that Outlaw's petition for writ of habeas corpus be DENIED and the respondent's motion to dismiss should be GRANTED.

Outlaw's request for an evidentiary hearing is hereby DENIED.

### IV.  REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the  Clerk written objections to the foregoing findings and recommendations within ten (10) days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b),

9

computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(e) of said rules. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

2. A district judge shall make a <u>de novo</u> determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations. <u>Thomas v. Arn</u>, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984), <u>cert. denied</u>, 474 U.S. 1019 (1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir.), <u>cert. denied</u>, 467 U.S. 1208 (1984).

                                                           /s/
                                      Tommy E. Miller
                                    United States Magistrate Judge

Norfolk, Virginia

April 14, 2005

## **CLERK'S MAILING CERTIFICATE**

A copy of the foregoing Report and Recommendation was mailed this date to the following:

Charles Henry Nave, Esq.
1225 Third Street, SW
Roanoke, VA 24016-5403

Jenifer Wicks, Esq.
Law Offices of Jenifer Wicks
503 D St. NW
Suite 250A
Washington, DC 20001


Kent P. Porter, Esq.
United States Attorney's Office
101 W. Main St.
Suite 8000
Norfolk, VA 23510


                                        Elizabeth H. Paret, Clerk


                            By _____
                                Deputy Clerk

                              April      , 2005